**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **KRISTY D.S.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-CV-1267-JAR** |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in evaluating her need to elevate her left leg during the workday and not including that limitation in her residual functional capacity ("RFC"). Because the Court concludes that the Commissioner's findings are supported by substantial evidence, the Court affirms the Commissioner's decision.

## I.     Procedural History

On January 30, 2020, Plaintiff protectively applied for a period of disability and disability insurance benefits. She alleged a disability onset date of June 4, 2019. Plaintiff's applications were denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

After a telephonic hearing on February 25, 2021, the ALJ issued a written decision on March 30, 2021, finding that Plaintiff was not disabled. Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council. Plaintiff's request for

review was denied on September 3, 2021.  Accordingly, the ALJ's March 2021 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and remand for a new administrative hearing.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[1]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[3]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(a).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

Pursuant to the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe impairment, or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8]  "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's RFC, which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10]  The claimant bears the burden in steps one through four to prove a

---

[5] *Id.* § 423(d)(2)(A).

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7] *Barkley v. Astrue*, Case 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); and then quoting *Williams v. Brown*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

disability that prevents performance of her past relevant work.[11]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 4, 2019.  He determined at step two that Plaintiff had the following severe impairments: obesity; reflex sympathetic dystrophy syndrome (RSD), left lower extremity; traumatic injury, left knee, status post-surgical repair; and history of right knee injury.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  Continuing, he determined that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the individual may not climb ladders, ropes, or scaffolds, but may occasionally balance, stoop, kneel, crouch, and crawl.  The individual should avoid concentrated exposure to hazards (e.g. dangerous machinery, unprotected heights), to extreme cold temperatures and weather, and to vibration.  The individual may use a cane for ambulation.[13]

The ALJ determined at step four that Plaintiff could perform past relevant work as an office clerk.  After considering Plaintiff's age, education, work experience, and RFC, he also found that Plaintiff could perform other jobs.  Thus, the ALJ concluded that Plaintiff had not been under a disability from June 4, 2019, through the date of his decision.

## IV.  Discussion

Plaintiff asserts one error in the ALJ's decision.  She contends that the ALJ erred in evaluating her need to elevate her left leg during the workday.  She states that her testimony and

---

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

[12] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

[13] Doc. 10 at 68.

the medical evidence supports her need to do so.  The Commissioner contends that substantial evidence supports the ALJ's RFC assessment that Plaintiff remained capable of performing a reduced range of sedentary work.

Social Security Ruling 16-3 provides that the ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[14]  As to the medical evidence, several regulations govern the ALJ's review.[15]  When evaluating medical opinions, these regulations provide that the agency will consider certain factors, including the supportability, consistency, relationship with the claimant, physician's specialization, and other factors.[16]  The most important factors in evaluating the persuasiveness of a medical opinion or prior administrative medical finding are supportability and consistency.[17]  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the] medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[18]  As to the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

---

[14] SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

[15] *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Claims filed after March 27, 2017, are governed by these regulations.  *See Bills v. Comm'r, SSA*, 748 F. App'x 835, 838 n.1 (10th Cir. 2018) (noting the revised regulations apply to claims filed on or after March 27, 2017).

[16] 20 C.F.R. § 404.1520c(a), (c)(1)–(5).

[17] *Id.* § 404.1520c(a).

[18] *Id.* § 404.1520c(c)(1).

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[19]

Here, there is one medical source statement from Plaintiff's primary care physician regarding Plaintiff's functional capacity. In this statement, Plaintiff's physician stated that, among other things, Plaintiff would need to elevate her legs above hip level with prolonged sitting or standing for 2 to 3 percent of an 8-hour workday. The ALJ considered this opinion but found that it was:

> not persuasive, as it is inconsistent with treatment notes and also with her physical therapy activities. The doctor's limitations appear to be overstated. The opinion is also inconsistent with the claimant's activities of daily living, such as driving a motor vehicle and shopping in stores within the community. Shifting at will is not supported by the medical evidence of record, and there is no basis in the medical evidence of record that the claimant needs to elevate her legs, at least not during an 8 hour workday.[20]

Plaintiff asserts that the ALJ's broad conclusion that there "is no basis in the medical evidence of record that the claimant needs to elevate her legs" is left unexplained and is unsupported by the record. Yet, if there is no medical evidence to support the need for Plaintiff to elevate her leg, the ALJ considered and gave the appropriate weight to the little medical evidence in the record regarding the need for Plaintiff to elevate her leg.

In addition, although Plaintiff contends that other medical evidence supports the need for Plaintiff to elevate her legs, she cites to only two records. With regard to the first document,[21] the Court reviewed the cited document and fails to see any such recommendation.[22] The second

---

[19] *Id.* § 404.1520c(c)(2).

[20] Doc. 10 at 71.

[21] Tr. at 494.

[22] To the extent, Plaintiff intended to reference another page, the physical therapy notes state "seated leg lifts." Tr. at 489. This note does not appear to be a reference to elevation of legs but rather to leg exercises.

document Plaintiff references does include the recommendation to elevate her leg, but this recommendation occurred after Plaintiff went to the emergency room for a fall.  There is nothing in this recommendation (or any other medical record) as to the duration, to what degree, or how often Plaintiff should elevate her leg.  Thus, there is no other medical evidence providing support for the need for Plaintiff to elevate her leg.

Furthermore, with regard to Plaintiff's physician's specific recommendation, he only recommended that Plaintiff elevate her leg above hip level for 2 to 3 percent of the 8-hour workday, which equals 10 to 15 minutes a day.  This amount is a very small period of time.  The ALJ could reasonably conclude that the inclusion of leg elevation in Plaintiff's RFC was unwarranted, particularly because the ALJ already determined that Plaintiff's physician's medical opinion was unpersuasive.

Finally, although Plaintiff cites to numerous medical records containing notes of swelling in Plaintiff's leg, these records do not include any indication of the need for Plaintiff to elevate her leg.  In addition, many of these records indicated that the swelling was resolving, or they indicated that the swelling occurred immediately after injury and/or surgery.  In sum, Plaintiff does not direct the Court to medical evidence supporting her need to elevate her leg.  Thus, she fails to demonstrate that the ALJ's discussion of the medical evidence was in error or that the ALJ's finding that Plaintiff's physician's opinion was unpersuasive was in error.

To the extent that Plaintiff asserts that the ALJ should have set forth more reasons for discounting Plaintiff's testimony, credibility is for the ALJ to determine.

> The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints.  Since the purpose of the credibility evaluation is to help the ALJ assess a

> claimant's RFC, the ALJ's credibility and RFC determinations are
> inherently intertwined.[23]

An ALJ's credibility determination is generally treated as binding upon review.[24]  The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[25]

In this case, the ALJ noted that Plaintiff testified that at times, she elevates her left knee above hip level, two to three times a day, for approximately one hour at a time.  The ALJ noted that Plaintiff's statements about the limiting effects of her symptoms were not entirely consistent with the evidence.  He noted that Plaintiff's knee pain improved with physical therapy. Ultimately, he concluded that after Plaintiff's surgeries, physical therapy, and pain relief medications, her left knee was stable.  The ALJ also noted that Plaintiff was able to drive and shop in stores within the community.  In addition, the ALJ found that the medical evidence did not support Plaintiff's need to elevate her legs.  Finally, the Court notes that even if Plaintiff needs to elevate her leg several times a day, there is no indication in the record why she could not do that outside of working hours.  Indeed, the ALJ's statement that "there is no basis in the medical evidence of record that the claimant needs to elevate her legs, at least not during an 8 hour workday"[26] appears to reflect this conclusion.

Plaintiff references several cases from the District of Kansas that she contends stand for the proposition that a remand is warranted in this case.  The cases that Plaintiff relies upon,

---

[23] *Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009) (citations omitted).

[24] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (citing *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)).

[25] *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

[26] Doc. 10 at 71.

however, involve different facts.  For example, in *Breitkretuz v. Berryhill*,[27] a medical source opined on two separate occasions that the claimant needed to elevate her legs 50 percent of the day at a 50-degree angle.[28]  The ALJ discounted the opinion stating that it was not supported by treatment notes.[29]  Upon review, the court found that the opinion was supported with specific treatment notes and thus it was error to discount the opinion on the basis that it was unsupported.[30]  Thus, because the recommendation was supported with treatment notes, the court found it necessary to remand the case for the ALJ to consider those records to determine whether the medical support for this proposition would change the RFC.[31]  Those circumstances are not present here.

In *Cianciolo v. Berryhill*,[32] the Appeals Council specifically remanded the case to the ALJ to consider whether the medical evidence supported the claimant's need to elevate his legs.[33]  In addition, there were multiple medical opinions stating that the claimant needed to elevate his legs.[34]  There was one medical opinion in the record that the claimant should elevate his legs "as much as possible," that it was "very important" to keep his legs elevated, and that the claimant should elevate his legs above his heart.[35]  There was a second medical opinion recommending that the claimant elevate his bilateral extremities for one hour every four hours.[36]

---

[27] No. 17-1261-SAC, 2018 WL 4184930 (D. Kan. Aug. 31, 2018).

[28] *Id.* at *2–3.

[29] *Id.* at *3.

[30] *Id.*

[31] *Id.*

[32] No. 17-1084-JTM, 2018 WL 348173 (D. Kan. Jan. 10, 2018).

[33] *Id*. at *3.

[34] *Id.*

[35] *Id.*

[36] *Id.*

The court remanded the case due to procedural errors because the ALJ failed to discuss the second medical opinion in conjunction with the first opinion.[37]  Again, those facts are not present in this case.

Here, the ALJ considered Plaintiff's physician's opinion and Plaintiff's statement that she needed to elevate her leg.  The ALJ discounted the physician's opinion because he found that it was inconsistent with treatment notes, physical therapy activities, and daily living activities.  In addition, the ALJ found that Plaintiff's testimony was not entirely consistent with the medical evidence and other evidence in the record.  It is the ALJ's job to weigh the evidence and to judge Plaintiff's credibility.  He found that there was no need to include the elevation of Plaintiff's legs in Plaintiff's RFC and adequately cited to the record.  Plaintiff is asking the Court to reweigh the evidence, which the Court cannot do.

## V.      Conclusion

The ALJ's RFC determination is supported by substantial evidence.  Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: July 15, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[37] *Id.*